**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **MICHAEL STEVEN KOBER,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.**_____ |
| **AMERICAN UNIVERSITY OF THE** | § | |
| **CARIBBEAN N.V., INC.,** | § | |
| *Defendant*. | § | |
| | § | |

## ORIGINAL COMPLAINT FOR INJUNCTIVE EMERGENCY RELIEF AND DEMAND FOR JURY TRIAL

**To the Honorable United States District Court Judge:**

Plaintiff, Michael Steven Kober (Kober), files his Original Complaint for Injunctive Relief and Demand for Jury Trial against Defendant, American University of the Caribbean N.V., Inc., owner and operator of American University of the Caribbean School of Medicine ("AUCSM"), and respectfully states the following:

### I.  Nature of the Action

1.      This is an action for emergency, preliminary and permanent injunctive relief, and for attorneys' fees and costs incurred in bringing this action based on AUCSM's refusal to provide reasonable accommodations to Kober pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.  Kober was a medical student at the AUCSM.  AUCSM has illegally refused and is illegally refusing to accommodate Kober's learning disability by dismissing Kober from medical school because he has yet to pass the United States Medical Licensing Exam (USMLE) Step 1 Exam.  At the time of this dismissal, Kober was attempting to obtain testing accommodations for this exam from the National Board of Medical Examiners

(NBME) based on his diagnosed disability.  Kober must pass the USMLE Step 1 Exam before he may continue with his medical school education.  Kober has successfully completed the basic science curriculum AUCSM offers at the St. Maarten's campus.  Once he passes the Step 1 exam, he will continue his studies at AUCSM through the clinical rotations the school operates at hospitals throughout the United States.  Rather than afford Kober the opportunity to establish his disability to the NBME, AUCSM arbitrarily and in violation of his rights under the ADA, dismissed Kober from medical school.  Moreover, because Kober is no longer enrolled in medical school, he cannot register for the USMLE Step 1 Exam.  Kober seeks a preliminary and permanent injunction prohibiting the AUCSM from continuing its violation of his ADA rights and compelling AUCSM to readmit Kober to medical school so he may register for the Step 1 Exam.

## II.  Parties

2.      Plaintiff, Michael Steven Kober, has completed the second year of instruction at AUCSM.  Kober has been diagnosed with a learning disability.  Kober's' learning disability impairs his reading ability to the point that his competence level is below that expected in comparison to most people and is a disability within the meaning of the ADA. 42 USC § 12102(2).

3.      Defendant, American University of the Caribbean N.V., Inc., is a for-profit, foreign corporation that owns and operates AUCSM (unless otherwise indicated the corporation and the medical school will collectively be referred to as AUCSM).  A Certificate of Domestication of American University of the Caribbean N.V. was filed with the State of Florida on September 29, 2003.  AUCSM's basic science campus is located on St. Maarten, Netherland Antilles.  Its administrative offices are located in Coral Gables, Florida.  AUCSM is fully

accredited by the Accreditation Commission on Colleges and Medicine, meets the requirements of the federally guaranteed student loan program, and is approved for participation in the Federal Family Education Loan Program and other federal financial aid programs.  The vast majority of AUCSM's students come from the United States.  After completing the basic science curriculum at the St. Maarten's campus, students attend two years of clinical studies at AUCSM's affiliated hospitals, many of which are located in the United States.  AUCSM, in fact, operates clinical rotations at approximately twenty different hospitals in the United States that are located in nine different states.  One of the hospitals is Brentwood Behavioral Health Company in Shreveport, Louisiana.  AUCSM may be served with this lawsuit through its registered agent, Fred Glickman at 9200 S. Dadeland Blvd. #508, Miami, Florida 33156.

### III.  Jurisdiction and Venue

4.     This action arises under the laws of the United States, specifically the ADA and the Rehabilitation Act, and accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction pursuant to 42 U.S.C. § 12188(a)(1), which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person who is being subjected to discrimination on the basis of disability in violation of Title III of the ADA. This Court has jurisdiction over AUCSM because AUCSM operates a clinical rotation in Shreveport, Louisiana.  AUCSM also actively markets itself to undergraduate students and recruits undergraduate students in Louisiana.

5.     Venue is proper in this district under 28 U.S.C. § 1391(c).

### IV.  Factual Allegations

6.     Kober is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely,

learning disabilities that substantially limit his major life functions of learning, reading, and writing.  42 U.S.C. § 12102(2)(A).

7.      Kober has completed his second year of instruction at AUCSM.  As part of his preparation for the third year of medical school, Kober is required to take the USMLE Step 1 Exam.  He has taken this exam three times and has been unable to complete the exams in the time allowed.  In fact, of the 336 questions on the test, as many as 50 to 70 questions Kober answered without reading because he did not have enough time.  Despite this fact, Kober came very close to passing the exam.  Because of his learning disabilities, described below, Kober has requested that under the ADA the NBME, the entity that administers the exam, provide him with additional time to take the exam.  These requests were not granted.  As a result, Kober was forced to take a leave of absence from AUCSM while he pursued his legal rights under the ADA. It was during his last leave of absence that AUCSM involuntarily withdrew Kober from school.

8.      The specific learning disabilities afflicting Kober include Attention-Deficit Hyperactivity Disorder, Anxiety Disorder and Dyslexia.  Although not clinically diagnosed until he was nineteen, evidence of these learning disabilities has been manifested throughout his academic studies, beginning when he was in kindergarten.

**A.      Kober's Early Education**

9.      Kober's learning disabilities began to manifest themselves at an early age.  From kindergarten through third grade, Kober attended a small private school where he struggled academically.   Kober was constantly reprimanded for his daydreaming and inattentiveness. While he was in the third grade, Kober took the SRA Survey of Basic Skills that compares a child's academic progress in various subject matters with that of other children throughout the country.  Kober's scores ranked him in the 27th percentile nationally for reading and in the 39th

percentile for language, meaning that 73% and 61% of the students taking the test outperformed Kober.

10.     Because of Kober's struggles in school, his parents transferred him a public school where they thought more resources would be available.  When his problems in school persisted, his parents requested that Kober be evaluated.  Kober's parents assumed he was being evaluated for learning disabilities; instead, however, he was tested in order to determine whether he should be placed into a Special Education Program.  In other words, the school was testing for low intelligence, not learning disabilities.  Not surprisingly, when the assessment was finished, Kober was not recommended for placement into the Special Education Program.  The observations made during the assessment were telling.  For instance, it was noted that Kober was inattentive and often daydreamed.  His grades in reading and language were mostly C's and D's. It was noted that his parents reported that Kober knew the material when he was at home, but could not reproduce the same results on a written test.  It was also noted that Kober was easily distracted and that his attention was not on his assignments.  Moreover, even though Kober was not placed into the Special Education Program, it was recommended that special concessions be allowed for him in the areas of spelling and written expression.  Because Kober's parents were misinformed about the nature and type of testing that was being done, and based on the verbal results given to them, they did not seek further diagnostic testing for learning disabilities at this time, as they thought that this was included in the assessment that had been done.

### B.     High School and College

11.     Kober's continued inattentiveness and poor performance at school led his parents to seek the smaller classroom environment.  Through a small private school classroom, together with private tutoring and programs at the Sylvan Learning Center, Kober was able to make some

adjustments that led to minor improvements in his academic progress from fifth grade through high school.

12.     During his senior year, Kober sat for the ACT Exam several times under normal time constraints, and received low scores each time.  His composite scores on the ACT Exam ranged from 16-18.  A score of 16 meant that 81% of the students taking the test scored at or above Kober's score.  Likewise a score of 18 meant that 67% of the students taking the test scored at or above Kober's score.  Moreover, each time Kober took the ACT Exam, he was unable to finish the test. After high school, Kober continued his studies at Louisiana State University (LSU).  Once at college, and faced with the large lecture setting, Kober's learning disabilities manifested themselves again.  He had a difficult time keeping focus and paying attention during the long lectures.  Puzzled by the continuing problems at LSU, the Kober family sought the assistance of a clinical psychologist.

13.     Kober was evaluated by David S. Post, Ph.D. for complications related to his academic stresses.  This occurred during Kober's second year at LSU.  Kober's Achievement scores revealed no problems with Broad Reading and Broad Math, and only mild problems with Broad Written Language.  His cognitive abilities scores revealed no problems with Auditory Processing or Visual Processing.  Kober's CPT scores, however, demonstrated significant problems with several aspects of attention, including the inability to sustain attention, impulsive responding and difficulty inhibiting responses, and impaired arousal levels.  Based on these tests, Dr. Post concluded that Kober suffered from Attention-Deficit Disorder, Inattentive Type and Anxiety Disorder NOS.  Dr. Post recommended that Kober be placed on medications and recommended that Kober receive academic accommodations at LSU for his attention disorder. As a result of Kober's documented learning disabilities, LSU granted Kober the following

accommodations: time and a half on in class assignments and exams, and a distraction reduced environment.

14.     After this diagnosis, Kober was treated for ADHD by Dr. Kaufman, a neurologist from Baton Rouge.  Dr. Kaufman prescribed medication for Kober and monitored him.  Once Kober was diagnosed and placed on medication, and once he received the accommodations from LSU, his GPA improved from 2.6 to 3.7.  It was around this time that Kober began preparing for the MCAT Exam so that he could go to medical school.  Both Dr. Post and Dr. Kaufman recommended that Kober receive accommodations when taking the MCAT Exam.  Dr. Post specifically recommended that Kober receive twice the standard time and that he take the test in a separate room.  These accommodations were granted.

### C.     Medical School and the Step 1 Exam

15.     Following his undergraduate studies, Kober sought admission at AUCSM. AUCSM actively markets itself to undergraduate students in Louisiana and recruits undergraduate students in Louisiana.  Kober has successfully completed his second year at AUCSM and plans to begin his third year following the Step 1 Exam.  The third year of medical school consists of participation in AUCSM's clinical rotations the school operates at various hospitals in the United States, including one in Shreveport, Louisiana.  Throughout his two years of medical school, Kober requested and AUCSM granted him accommodations when taking exams.  Specifically, he was granted additional time to complete tests.

16.     In 2008, after successfully completing his second year of medical school, Kober prepared to take the USMLE Step 1 Exam.  In anticipation of the Step 1 Exam, Kober wrote to the NBME requesting additional time to take the exam.  In support of his request, Kober advised NBME that he was given formal accommodations of extra time on exams by (1) Louisiana State

University; (2) the Association of American Medical Colleges (the not-for-profit organization that administers the MCAT); and (3) the American University of the Caribbean School of Medicine.  Kober also advised NBME that he had been diagnosed with ADHD, an anxiety disorder and dyslexia.  Kober also enclosed two reports from Dr. Post dated March 13, 2000 and August 27, 2003.  Likewise, Kober enclosed a report from Dr. P. Keith Nabours, a licensed psychiatrist.

17.    On December July 16, 2008, NBME wrote to Kober and advised him that the information he had submitted was incomplete and asked him to submit documentation demonstrating that he is substantially limited in one or more major life activities.  Kober was also instructed to submit documentation proving the extent to which he meets the diagnostic criteria of DSM-IV-TR.  Lastly, Kober was told to submit "objective records to document the chronic course and current impact of your reported difficulties, such as college, medical school, and other post-secondary records and transcripts and all scores for nationally standardized tests taken."

18.    Because of NBME's resistance, Kober took the Step 1 Exam in both July 2008 and February 2009.  Kober was unable to read all the exam questions in the time allowed.  Despite this fact, Kober came very close to passing both exams.

19.    Subsequently, Kober submitted his second request for the accommodation of additional time on the Step 1 Exam.  As before, the NBME requested that Kober supply it with additional information.  Kober did so on May 27, 2009 by providing the NBME with a report from Dr. Patricia Post, a clinical psychologist.  This report states that a diagnostic interview and evaluation of Kober took place over two days in May 2009.  The test administered was the Nelson-Denny Reading test.  His test scores on this test reflect poor performance in reading (2nd

percentile), vocabulary (4th percentile) and comprehension (2nd percentile).  Overall, Kober placed in the second percentile, meaning that 98% of those taking the test did better than Kober. The Nelson-Denny test is a timed test.  On vocabulary, he was only able to complete 42 of the 80 questions; on reading comprehension, he was only able to complete 18 of the 38 questions.  In the untimed Gray Oral Reading Test, Kober fared much better, ranking in the 37th percentile. The results from this test were also given to the NBME.  This material was in addition to the material supplied to the NBME in 2008, material that included the reports from Dr. David Post and Dr. Nabours.[1]  As with the other reports, the report of Dr. Patricia Post noted that Kober suffered from ADHD and dyslexia.  She concluded that Kober was qualified for accommodations and should receive double time when taking timed tests.

20.    On June 24, 2009, the NBME inexplicably again denied Kober's request for accommodations, claiming the information he had sent was incomplete.  The NBME made this decision without ever having met, tested or evaluated Kober.  However, based on recent changes to the ADA, Kober requested that the NBME reconsider its decision, Although the NBME stated in a letter dated July 30, 2009 that it would do so, the NBME failed to rule on Kober's request, thereby effectively denying his accommodations request.  The three month window during which Kober could take the Step 1 exam after registering for it expired on August 31, 2009.

**D.    Lawsuit Against the NBME**

21.    Based on the NBME's failure to grant his request, on October 9, 2009, Kober filed suit against the NBME in the United States District Court for the Western District of Louisiana for violating Title III of the ADA (42 U.S.C. § 12189).  This statute, which prohibits

---

[1] Before granting a time accommodation on the STEP 1 Exam, NBME requires a learning disorder diagnosis and a current (less than three years old) assessment of an applicant's learning disability.  The Woodcock Johnson III battery of tests is accepted by the board for this assessment and a DSM-IV diagnosis is what is required.  Based on this test and others, Dr. Post made the following DSM-IV diagnoses: 314.00 ADHD, Predominantly Inattentive Type.

discrimination against persons with disabilities in professional examinations such as the USMLE

Step 1, states as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

22.     Kober also claimed the NBME failed to assure that the USMLE Step 1 "is

selected and administered so as to best insure that, when the examination is administered to an

individual with a disability that impairs sensory, manual or speaking skills, the examination

results accurately reflect the individual's aptitude or achievement level or whatever other factors

the examination purports to measure, other than reflecting the individual's impaired sensory,

manual, or speaking skills" pursuant to 28 C.F.R. § 36.309(b).

23.     The NBME moved to dismiss this suit, arguing that because the NBME had not

yet made a "final determination" denying his accommodation request that the case was not ripe

for judicial review.  On June 7, 2010, the Court dismissed Kober's complaint without prejudice,

holding that the case was not ripe for decision.  The Court specifically noted that Kober would

endure no hardship from its decision.  The Court reasoned that if Kober registers again for the

test and requests accommodations that are granted, then he will not have suffered any injury.  If

he registers for the test and requests accommodations that are denied, then the Court stated that

Kober could seek redress in Court.  Unfortunately, however, AUC's discriminatory practices

have precluded Kober from both registering for the Step 1 test and from obtaining a "final

determination" from the NBME.

**E.     Kober's Dismissal from AUCSM**

24.     Based on the court's ruling, Kober, in a letter dated July 27, 2010, asked that the NBME make a final determination regarding his request for accommodations.  The NBME replied on August 3, 2010, informing Kober that since the time period during which Kober could take the Step 1 exam had expired, Kober was required to once more register for the test before he could then seek accommodations. When Kober attempted, however, to register to take the exam, he was informed that he was no longer enrolled in a medical school and therefore could not register for the test.  Kober thus faces an impossible situation: he cannot register for the USMLE Step 1 exam (and thus request accommodations) because he is not enrolled in medical school; and he cannot continue his medical school education until he successfully completes the USMLE Step 1 exam.

25.     Shortly after being told that he was no longer enrolled in medical school, Kober received a letter from AUCSM dated August 15, 2010.  This letter came from Natallia Chong. Chong is the Director of Clinical Student Affairs and is in the Medical Education Administrative Services ("MEAS") of AUCSM.  The MEAS office is located in Coral Gables, Florida.  This letter stated that he had been withdrawn from medical school because he was AWOL (absent without official leave) for the May 2010 semester in violation of Section 12.8 of the Student Handbook.  Section 12 of the Handbook provides that a student may request and obtain a long term leave from school for academic reasons, including preparing for and taking the Step 1 exam.  Contrary to AUCSM's letter of August 15, 2010, every semester that Kober was absent in order to study for the Step 1 exam or to deal with the NBME on his request for accommodations, he requested that he be granted academic leave.

26.     AUCSM also complained that Kober had failed to comply with the conditions of the leaves granted him for the May 2009, September 2009 and January 2010 semesters because he was "required to make an attempt to sit for the USMLE Step 1 exam."  AUCSM cited Section 28.8 of the Student Handbook for the proposition that any student who is granted an Academic Long Term Official Leave to take the Step 1 exam and who does not sit for the exam during the leave period will be dismissed on academic grounds.  Of course, it was during these periods of official leave that Kober was attempting to sit for the exam but could not do so because his request for accommodations had been denied.  It is clear that if Kober had passed the Step 1 exam then he would not have been dismissed from AUCSM.

27.     When Kober discovered that he had been involuntarily withdrawn from medical school, he called AUCSM to discuss this matter.  After several unsuccessful attempts, he finally was able to contact Cynthia Holden, who works in the MEAS office in Coral Gables, Florida.  This was on September 2, 2010.  Holden also holds the position of Authorized House counsel for the school.  Kober asked Holden what he needed to do in order to appeal his involuntary withdrawal from school.  Holden declined to answer Kober's questions and referred him to Pat Litwin, who also works in the MEAS section and who has the title of Liaison Official.  Kober also inquired to Litwin about appealing his involuntary withdrawal.  Litwin's response was that she was not authorized to answer that question.  When Kober asked who he could to talk who was authorized to answer his questions, Litwin once more replied that she was unauthorized to answer that question.  The only thing Litwin told Kober was that he could apply for readmission to the school.  As a result, Litwin sent to Kober an application for readmission to AUCSM.

28.     Because he was unable to get any answers to his questions, Kober had his attorney contact AUCSM.  In an email to Holden dated September 8, 2010, Kober's attorney

asked that Holden send to him the information necessary for Kober to appeal his dismissal to the Student Evaluation and Promotions Committee.  Holden responded the following day and stated that Kober was not dismissed on academic grounds, but rather was "withdrawn" because of his "failure to maintain current enrollment status."  On September 10, 2010, counsel for Kober replied to Holden and, among other things, asked that she confirm that Kober has exhausted his administrative remedies and has no right to an appeal.  Holden confirmed, in an email dated September 15, 2010, that Kober did not have the right to an appeal because he was not dismissed but was withdrawn from school.  Specifically, Holden stated that Kober failed to apply for a seventh term of leave for the May [2010] semester and thus was withdrawn from enrollment pursuant to Section 12.8 of the Student Handbook.  Holden again advised Kober to apply for readmission.

29.     Holden's statement that Kober had failed to apply for leave for the May 2010 semester is incorrect.  Kober sent in his request for leave for every semester that he was absent while he dealt with the NBME.  There had never been any problem in this regard.  However, the last time he sent in his request (for the May 2010 semester) he never heard back from the school. Several times Kober attempted to contact Natallia Chong who works in the MEAS department. Despite the fact that he left several messages, Chong never returned his call.

30.     Based on the choices before him, Kober decided to apply for readmission.  On November 3, 2010, AUCSM granted him conditional readmission.  This letter came from Bruce Kaplan, D.O., the Chief Academic Officer for AUCSM.   Dr. Kaplan is with the MEAS Department in Coral Gables, Florida.  The terms for readmission stated that Kober would have to (1) submit a request for leave for the January 2011 term on or before January 3, 2011; (2) sit for the USMLE Step 1 by March 25, 2011; (3) complete a Step 1 review course; and (4) fax to the

school a passing score for the Step 1 exam by April 29, 2011, or be dismissed on academic grounds.

31.     Shortly thereafter, Kober replied to AUCSM.  He stated that he certainly would be willing to apply for leave by the requested date and take a review course.  He stated, however, that he could not agree to the requirements that he take the Step 1 exam by March 25, 2011 and provide the school with a passing score by April 29, 2011, or agree to his dismissal on academic grounds.  Kober explained that if he is readmitted to AUCSM, then his plan is to immediately register for the Step 1 exam and request testing accommodations.  If the NBME grants that request, then he will sit for the Step 1 exam by March 25, 2011.  If the NBME denies his request, however, then it is his plan to refile his suit against it under the ADA.  Kober further explained that because it is doubtful that this suit could be resolved in time to take the exam by March 25, 2011, if he agreed to all of the school's conditions then he would be agreeing to sit for the exam without accommodations – accommodations he believes he is entitled to under the ADA.

32.     Rather than agree to conditions that deny him his rights under the ADA, Kober proposed the following to AUCSM.  If the NBME grants his request for accommodations, then he will sit for the Step 1 exam by March 25, 2011.  However, if the NBME denies his request, then he will refile his lawsuit against it within thirty days of the final determination by the NBME.  Under this proposal, AUCSM would agree to keep Kober enrolled until the suit against the NBME is resolved.  Finally, Kober stated that once the suit with the NBME is over, he will then take the Step 1 exam with or without accommodations, depending on how the court rules. AUCSM rejected Kober's proposal on November 22, 2010, despite the fact that Kober has paid the school over $244,000.00 in tuition.  This letter was written by Dr. Bruce Kaplan.  Kober called Dr. Kaplan on December 2, 2010, and asked if there was any way the two sides could

work something out.  Kober explained that the accommodations he was seeking from the NBME were the same ones granted to him by AUCSM.  Dr. Kaplan replied that AUCSM would not extend Kober's leave regardless of the circumstances and that the school would not modify its policy for any reason.   On December 22, 2010, in a letter from Dr. Kaplan, AUCSM withdrew its offer for readmission.

### F.   Evidence of Kober's Disability

33.   Kober has been evaluated by numerous professionals, including medical doctors, psychiatrists and psychologists.  These professionals have all come to the same conclusion – that Kober has learning disabilities and should receive accommodations under the ADA.  As a result of their diagnoses, LSU, the MCAT Exam and AUCSM afforded Kober the accommodations his learning disabilities required.  The specific professionals evaluating Kober are Dr. Charles Kaufman, a neurologist and a Fellow in the American Academy of Neurology (2002); Dr. Keith Nabours, a psychiatrist (2008); Dr. David Post, a licensed psychologist with certifications in Clinical Psychology and Clinical Neurology (2000-2003); and Dr. Patricia Post, a clinical psychologist (2009).

34.   The actual tests that these doctors administered to Kober include: (1) the Bender Visual-Motor Test; (2) Connors' Continuous Performance Test; (3) Wechsler Adult Intelligence Test, Third Edition; (4) Woodcock-Johnson Tests of Achievement, Revised; (5) Woodcock-Johnson Tests of Cognitive Ability; and (6) the Nelson-Denny Reading Test.  Moreover, these doctors also interviewed Kober and his family members, reviewed his school records and observed him while he was being tested.  It is absolutely critical to note that all of the foregoing diagnostic tests and evaluations were personally administered by licensed professionals.  In other

words, the diagnoses and evaluations were done by professionals who personally, hands-on, eye-to-eye, met with, observed, and tested Kober.

35.     The foregoing myriad of diagnostic tests and evaluations resulted in Kober meeting the DSM-IV criteria for the following diagnosis: Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (DSMI-IV 314.00).  He was also diagnosed Anxiety Disorder NOS and with dyslexia.

36.     Moreover, dating as far back as the early 1990's when Kober was in elementary school, a team of professionals including Educational Assessment Teachers, School Psychologists, School Social Workers and Speech/Language Evaluators assessed Kober as having difficulty in both reading and writing.  Likewise, it was observed by these professionals that Kober struggled with paying attention, that he often daydreamed, that he required structure and that he had problems in staying on task.  All of these observations are consistent with the type of learning disabilities with which Kober was later diagnosed.  Indeed, professionals and diagnosticians over the past several years have diagnosed, and continue to diagnose, Kober with a learning disability that comports with the criteria of the DSM-IV.

37.     Specifically, and covering the years from his fourth grade in school through the present, Kober psychologists, diagnosticians, and other learning disability specialists have consistently noted, among other things:

- Kober often fails to give close attention to details and makes careless errors in schoolwork and on academic tests.

- Kober has difficulty in sustaining attention in tasks.  He loses attention and focus during class lectures and on testing, despite a high level of motivation and resolve to improve.

- Kober often does not appear to listen when talked to, causing him to miss critical information regarding test instructions and assignments in class.

- Kober often does not follow through on instructions and fails to finish schoolwork, despite the intention and effort to do so.

- Kober has difficulty organizing tasks and activities, despite expending much time and effort.

- Kober is easily distracted by extraneous stimuli, despite a high level of motivation and effort.

- Kober has a history of impulsive responses to tests with increased errors and a history of becoming easily frustrated.

- Kober should receive formal accommodations on timed tests of up to twice the standard time.

- Kober should be tested in a separate room.

- Kober has a disability as defined by the ADA and thus should receive appropriate accommodations.

38.     Students at the AUCSM (as in many medical schools in the United States) are requested to take and pass the USMLE Step 1 before starting the third year of medical school. The third year of school consists of "rotations," i.e., medical education through the practical application of the principles learned in the classroom.  AUCSM requests the Step 1 exam be taken before the medical student begins the third year of school so that the preparation for the exam will not interfere with the third year studies.  Passing the Step 1 is a prerequisite to completing the third year, obtaining residency admission, and being able to sit for the Step 2 and 3 examinations.

### G.     AUCSM's Refusal to Provide Reasonable Accommodations

39.     Kober has taken the USMLE Step 1 Exam three times without accommodations and came very close to passing, despite having insufficient time to read as many as 50 to 70 of the 336 questions.  With accommodations, Kober is confident he will pass. Due to AUCSM's strict and unyielding rules, if Kober is not allowed to remain enrolled, which is a reasonable

accommodation, it will be impossible for him to register for the Step 1 Exam, request accommodations and finish medical school despite investing time, hard work and money into complete his first two years.

40.      The facts establish that Kober has definite learning disabilities that substantially limit his major life activities of learning, reading and writing as compared to most people.  Under the ADA, Kober is entitled to stay enrolled in medical school while he litigates with the NBME. Allowing Kober to stay enrolled is certainly a reasonable accommodation.  AUCSM's refusal to provide Kober with the accommodation of enrollment, despite knowledge and acknowledgement of Kober's' documented learning disabilities that are protected under the ADA, is a violation of Kober's' rights under the ADA.

### Count I -- Violation of ADA and Request for Injunctive Relief

41.      Kober incorporates by reference the foregoing paragraphs.

42.      Kober is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely, learning disabilities that substantially limit his major life functions of learning, reading, and writing.  42 U.S.C. § 12102(2)(A).

43.      Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C. § 12102(2).   Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities.  The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA.  The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life

activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 CFR, pt. 36, App. B.

44.     As noted above, Kober has a learning disability that substantially impairs his ability to read and process the written word.  His disability precludes him from learning, reading and writing in the same manner and in the same amount of time as most people.  This learning disability substantially limits his activity of learning, reading, and writing, in comparison to most people.

45.     Failure in the taking and passing of the USMLE exam necessarily precludes an individual from employment as a medical doctor in the United States.  Successful passing of the USMLE exam is a prerequisite to licensure to practice medicine in the United States, and the level of performance in the taking of the USMLE exam is a primary determinant of a candidate's job opportunities for residency.  Thus, Kober's entire future livelihood as a medical doctor rests on this exam.

46.     Kober made formal written request of NBME for reasonable accommodation for his disability in connection with taking the USMLE Step 1 Exam, i.e., two times the standard time to take the exam, an accommodation NBME has made to others who have requested the accommodation.  Such accommodations are consistent with the reasonable accommodations Kober was provided in his undergraduate studies at LSU, on the MCAT Exam for entry into medical school, and the formal accommodations he received at his medical school, AUCSM.

47.     Further, the Department of Justice ("DOJ") enacted new regulations for the ADA that went into effect on March 15, 2011.  28 C.F.R. § 36.309.  In the Appendix providing guidance for these regulations, the DOJ states:

(1)     "When an applicant's documentation demonstrates a consistent history of a diagnosis of a disability, and is prepared by a qualified professional who has made an

individualized evaluation of the applicant, there is little need for further inquiry into the nature of the disability and generally testing entities should grant the requested modification, accommodation, or aid."

(2)    "If an applicant has been granted accommodations post-high school by a standardized testing agency, there is no need for reassessment for a subsequent examination."

75 Fed. Reg. 56297-98 (September 15, 2010).  These new regulations clearly demonstrate that the NBME erred in denying Kober the requested accommodations since Kober has a consistent history of a diagnosis of a disability by a qualified professional and since he was granted accommodations at LSU, AUCSM and on the MCAT exam.  The only thing standing in Kober's way are the decisions by AUCSM to involuntarily withdraw Kober from medical school and to refuse to grant him any further leave while he litigates his claims against the NBME.

48.    Under the ADA, "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the . . . accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a).  The definition of "public accommodation" includes postgraduate private schools. 42 U.S.C. § 12181(7)(J).  Consequently, an institution must modify its policies, practices, and procedures to meet the needs of a student with a disability.  *See* 42 U.S.C. § 12182(b)(2)(A)(ii).  Moreover, a court may issue an injunction requiring a party to modify its policies in order to accommodate a disabled person.  42 U.S.C. §12188(a)(2).

49.    AUCSM discriminated against Kober by withdrawing him from the AUCSM and refusing to grant him a leave of absence pending the resolution of his ADA accommodation request with the NBME.  Kober made a formal, written request to AUCSM for accommodations.  Specifically, he requested that AUCSM keep him enrolled in school while he seeks test

accommodations from the NBME.   Kober's request for accommodations is reasonable. Although Kober requested this accommodation, AUCSM refused to grant it.

50.     AUCMS's refusal to provide the reasonable accommodations Kober requested constitutes an illegal failure to accommodate a disabled person in violation of the ADA.

51.     Kober will be irreparably harmed if AUCSM continues its illegal refusal to provide him the reasonable accommodations requested.   Indeed, unless this Court grants preliminary injunctive relief prohibiting the continued violation of Kober's ADA rights and compelling AUCSM to provide the requested accommodation, (a) Kober's' medical school career will be finished because he has been involuntarily withdrawn from AUCSM and thus has been prevented from continuing his studies; (b) Kober will be unable to finish medical school because a passing score on the USMLE Step 1 exam is a prerequisite to continuing and completing his medical school education; (c) Kober cannot even register for the Step 1 exam because he is no longer enrolled in medical school; (d) as a result of his documented learning disability, and given his history with prior examinations, including the Step 1 exam, Kober is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA; (e) Kober's' opportunity to engage in his career of choice is effectively on hold until AUCSM is compelled to comply with the ADA; (f) the conditional readmission offered by AUCSM that required Kober to take and pass the Step 1 exam by April 29, 2011, failed to account for his learning disability, thereby violating the ADA; (g) requiring Kober to take the USMLE Step 1 before he can obtain test accommodations puts him at distinct disadvantage given his disability and violates the ADA; and (h) reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Kober's' future residency and professional career options.

52.     Allowing Kober the time to request test accommodations and subsequently take the Step 1 exam with additional time would not fundamentally burden AUCSM, nor will it alter the nature of the program.  Kober is not asking AUCSM to alter the requirements in place to remain enrolled in medical school; rather, he simply needs to stay enrolled with a leave of absence so that he may litigate his disability claim with the NBME.

53.     AUCSM will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

54.     The public interest will be served by granting the requested injunctive relief.  The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the AUCSM to continue its unlawful refusal to provide Kober with the ADA accommodation to which he is justly entitled.

55.     As a result of the AUCSM's violation of the ADA, Kober suffered or will suffer great injury, including, but not limited to, lost employment opportunities, extensive out-of-pocket pecuniary losses, and severe emotional distress and anguish.

56.     AUCSM in denying Kober's request for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Kober's' ADA rights.

57.     Accordingly, under the ADA, Kober is entitled to and hereby requests entry of a preliminary injunction directing AUCSM to immediately cease and desist from its refusal to accommodate Kober's' requests for accommodation concerning his enrollment in medical school and ordering that AUCSM immediately comply with the ADA by readmitting Kober and

allowing him to remain enrolled at AUCSM while he litigates his claim for test accommodations with the NBME for the USMLE Step 1 exam.

58. Further, Kober is entitled to and hereby requests that the Court enter a permanent injunction directing that AUCSM to immediately cease and desist its refusal to accommodate Kober's' request for an accommodations as set forth herein. Specifically, Kober is entitled to and hereby requests an injunction requiring AUCSM to readmit him to medical school and maintain him on AUCSM'S roll until his lawsuit against the NBME is resolved

### Count II – Violation of the Rehabilitation Act and Request for Injunctive Relief

59. Kober incorporates by reference the foregoing paragraphs.

60. Kober has a learning disability, as described herein. AUCSM receives federal financial assistance. The Rehabilitation Act provides that "[n]o qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under" any covered program or activity. 29 U.S.C. § 794(a).

61. By reason of his disability, Kober is a qualified individual. AUCSM is a covered program or activity. Similar to the ADA, the Rehabilitation Act prohibits discrimination against a person with a disability and states that such persons receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations.

62. As set forth in this complaint, AUCSM discriminated against Kober by withdrawing him from the AUCSM and refusing to grant him a leave of absence pending the resolution of his ADA accommodation request with the NBME. Kober made a formal, written request to AUCSM for accommodations. Specifically, he requested that AUCSM keep him

enrolled in school while he seeks test accommodations from the NBME.  Kober's request for accommodations is reasonable.   Although Kober requested this accommodation, AUCSM refused to grant it.

63.   AUCMS's refusal to provide the reasonable accommodations Kober requested constitutes an illegal failure to accommodate a disabled person in violation of the Rehabilitation Act.  As a result, Kober is entitled to the injunctive relief described above.

### Count III -- Attorney Fees

64.   Kober incorporates by reference the foregoing paragraphs.

65.   Kober is entitled to and, hereby, does request an award of reasonable attorneys' fees, expenses and costs under 29 U.S.C. § 794a and 42 U.S.C. § 12205.

### Jury Demand

66.   Kober hereby demands a trial by jury for all issues in this case that may be triable by a jury of his peers.

### Prayer

WHEREFORE, PREMISES CONSIDERED Kober requests that this Court grant judgment in his favor and against AUCSM as follows:

a.   enter a preliminary injunction directing AUCSM to immediately cease and desist from its refusal to accommodate Kober's' requests for accommodation concerning his enrollment in medical school and ordering that AUCSM immediately comply with the ADA and the Rehabilitation Act by readmitting Kober and allowing him to remain enrolled at AUCSM while he litigates his claim for test accommodations with the NBME for the USMLE Step 1 exam;

b.     order AUCSM to appear on the date and time affixed by this Court to show cause, if any there be, why a preliminary injunction as prayed for above, should not be issued;

c.     enter judgment in the form of a permanent injunctive order directing that AUCSM to immediately cease and desist its refusal to accommodate Kober's' request for an accommodations as set forth herein.  Specifically, Kober is entitled to and hereby requests a permanent injunction requiring AUCSM to readmit him to medical school and maintain him on AUCSM'S roll until his lawsuit against the NBME is resolved;

d.     enter judgment against AUCSM awarding such compensatory damages as may be proven by Kober and to which he is entitled;

e.     enter judgment against the AUCSM awarding Kober recovery of his reasonable attorneys' fees, costs and expenses incurred in bringing and prosecuting this litigation; and

f.     awarding such other and further relief as may be appropriate, in law or in equity, to which Kober may otherwise by entitled.

Respectfully submitted,

KITCHENS, BENTON, KITCHENS & BLACK

By:___s/ Clinton C. Black_____

Clinton C. Black (TA)
Bar Roll # 26604
2122 Airline Drive, Suite 200
Bossier City, Louisiana 71111
Telephone:     (318) 747-9636
Facsimile:     (318) 747-7679

MULLIN HOARD & BROWN, LLP
Robert R. Bell, TSBN 00787062
John G. Turner, TSBN 20320550
500 S. Taylor, Ste 800
P.O. Box 31656
Amarillo, Texas 79120
Telephone:     (806) 372-5050
Facsimile:     (806) 372-5086
E-mail: rbell@mhba.com

*Attorney for Plaintiff, Michael Kober*

## <u>VERIFICATION</u>

STATE OF LOUISIANA         §
                           §
EAST BATON ROUGE PARISH    §

      BEFORE ME, the undersigned notary public, on this day personally appeared Michael Steven Kober, who, after being duly sworn, stated under oath that he the plaintiff in this action, that he has read Plaintiff's Original Complaint for Emergency Injunction Relief and Demand for Jury Trial, and that every factual statement contained in the complaint is within his personal knowledge and is true and correct.


_____
                  Michael Steven Kober


      SUBSCRIBED AND SWORN to before me on this the _____ day of April 2011.


_____
Notary Public, State of Louisiana