**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **MICHAEL STEVEN KOBER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO: 11-CS-00623** |
| **AMERICAN UNIVERSITY OF THE** | § | |
| **CARIBBEAN N.V., INC.,** | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS AND BRIEF IN SUPPORT**

Clinton C. Black (TA)
Bar Roll # 26604
2122 Airline Drive, Suite 200
Bossier City, Louisiana 71111
Telephone:     (318) 747-9636
Facsimile:     (318) 747-7679

MULLIN HOARD & BROWN, LLP
Robert R. Bell, TSBN 00787062
John G. Turner, TSBN 20320550
Richard Biggs, TSBN 24064899
P.O. Box 31656
Amarillo, Texas 79120
Telephone:     (806) 372-5050
Facsimile:     (806) 372-5086

*Attorneys for Plaintiff, Michael Kober*

# **TABLE OF CONTENTS**

I. Background Facts ......................................................................................... 1

    A.   Kober's Lawsuit Against the NBME ...................................................... 3

    B.   Kober's Dismissal from AUCSM ......................................................... 4

    C. Kober's Allegations Against AUCSM .................................................. 9

II.  Motion to Dismiss Pursuant to Rule 12(b)(6) ............................................ 9

III.  This Court has Personal Jurisdiction over AUCSM. ................................. 11

    A. General Jurisdiction .......................................................................... 12

    B. Specific Jurisdiction ......................................................................... 16

IV.  Venue ....................................................................................................... 17

V.  Prayer ....................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208 (5th Cir. 2000) ............................... 12, 13

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009) .................................... 17

*Baker v. Putnal,* 75 F.3d 190 (5th Cir.1996) ................................................. 1, 10, 11

*Baragona v. Kuwait Gulf Link Transport Co.*, 594 F.3d 852 (11th Cir. 2010) ........................... 13

*Baton Rouge Bldg. & Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879 (5th Cir. 1986) ........................................................ 9

*Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987) ...................................... 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................ 10

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ............................................ 16

*Carlin v. Trustees of Boston Univ.*, 907 F. Supp. 509 (D. Mass. 1995) ............................... 11

*Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp. 2d 866 (E.D. Tex. 2008) .................. 12

*DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559 (E.D. La. 2005) ............................ 12

*Gonzalez v. Kay,* 577 F.3d 600 (5th Cir. 2009) ................................................. 10

*Guidry v. U.S. Tobacco Co.,* 188 F.3d 619 (5th Cir.1999) ........................................ 13

*Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408 (1984) .......................... 13, 16

*Hernandez v. Vanderbilt Mortg. & Fin., Inc.*, 2010 WL 1875796 (S.D. Tex. 2010) .................. 12

*In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F. Supp. 2d 822 (E.D. La. 2010) ....................................................... 10

*In re Chinese Manufactured Drywall Products Liab. Litig.*, 767 F. Supp. 2d 649 (E.D. La. 2011) ....................................................... 13

*Johnson v. Coldwell Real Estate Corp.*, 2006 WL 2403539 (N.D. Miss. 2006) ..................... 10

*Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465 (5th Cir. 2006) ............................... 12

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996) ................ 13, 15

*Morris v. B.C. Olympiakos, SFP*, 721 F.Supp.2d 546 (S.D. Tex. 2010) ....................... 13

*Omega Hosp., L.L.C. v. Bd. of Trustees of State of N. Carolina Teachers' & State Employees' Comprehensive Major Med. Plan*, 2008 WL 4286757 (E.D. La. 2008) ................................................................................................................ 13

*Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372 (10th Cir. 1981). .................. 11

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ............................... 16

*Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496 (E.D. La. 2010) ............................................ 12

*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ....................................................................... 12, 16

**Statutes**

28 U.S.C. § 1391(c) ...................................................................................................................... 17

28 U.S.C. 1406(a) ......................................................................................................................... 17

42 U.S.C. § 12102(2)(A) ................................................................................................................ 9

42 U.S.C. § 12189 ........................................................................................................................... 3

La. Rev. Stat. Ann. § 13:3201(B) ................................................................................................ 12

**Other Authorities**

Fed. Prac. & Proc. § 1366 (2011) ................................................................................................ 10

**Rules**

Rule 12(b)(6) ............................................................................................................................. 9, 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **MICHAEL STEVEN KOBER,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO: 11-CS-00623** |
| **AMERICAN UNIVERSITY OF THE** | § | |
| **CARIBBEAN N.V., INC.,** | § | |
| *Defendant*. | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO**
**DISMISS AND BRIEF IN SUPPORT**

Plaintiff Michael Steven Kober ("Kober") responds to Defendant American University of the Caribbean, N.V. ("AUCSM" or "AUC"), and respectfully shows as follows:

**I. Background Facts**[1]

1.      Kober is a former student of American University of the Caribbean's School of Medicine, and he complains of its unlawful decision to dismiss him from its program of study because of his disability.

2.      Kober began his study at AUCSM after graduating from Louisiana State University ("LSU"). During his undergraduate studies at LSU, Kober was diagnosed with Attention-Deficit Disorder, Inattentive Type and Anxiety Disorder NOS. Kober's treating physician placed Kober on medications and recommended that Kober receive academic accommodations at LSU for his attention disorder. As a result of Kober's documented learning

---

[1] The facts stated herein are taken from Kober's verified first amended complaint that was filed on October 4, 2011. For purposes of AUCSM's motion to dismiss, these facts must be taken as true.  *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).

disabilities, LSU granted Kober time and a half on in class assignments and exams and a distraction reduced environment. *See Kober's First Amended Complaint*, ¶ 10-12.

3.      Kober enrolled in AUCSM in 2005, and successfully completed his fist two years of schooling. Following the second year of medical school, all persons wishing to pursue licensure in the United States ─ as well as all AUCSM students ─ must successfully pass the National Board of Medical Examiners ("NBME") Step 1 Exam. The third year of medical school, which is predicated upon a student passing the Step 1 Exam, consists of participation in AUCSM's clinical rotations the school operates at various hospitals in the United States, including one in Shreveport, Louisiana. Throughout his two years of medical school, Kober requested and AUCSM granted him additional time to complete tests. *See Kober's First Amended Complaint*, ¶ 17.

4.      In 2008, after successfully completing his second year of medical school, Kober prepared to take the USMLE Step 1 Exam. In anticipation of the Step 1 Exam, Kober wrote to the NBME requesting additional time to take the exam.  In support of his request, Kober advised NBME that he was given formal accommodations of extra time on exams by (1) Louisiana State University; (2) the Association of American Medical Colleges (the not-for-profit organization that administers the MCAT); and (3) the American University of the Caribbean School of Medicine. Kober also advised NBME that he had been diagnosed with ADHD, an anxiety disorder and dyslexia. Kober also enclosed two reports from Dr. Post dated March 13, 2000 and August 27, 2003. Likewise, Kober enclosed a report from Dr. P. Keith Nabours, a licensed psychiatrist. *See Kober's First Amended Complaint*, ¶ 18.

5.      On December July 16, 2008, NBME wrote to Kober and advised him that the information he had submitted was incomplete and asked him to submit documentation

demonstrating that he is substantially limited in one or more major life activities. Kober was also instructed to submit documentation proving the extent to which he meets the diagnostic criteria of DSM-IV-TR. Lastly, Kober was told to submit "objective records to document the chronic course and current impact of your reported difficulties, such as college, medical school, and other post-secondary records and transcripts and all scores for nationally standardized tests taken." *See Kober's First Amended Complaint*, ¶ 19.

6.      Because of NBME's resistance, Kober took the Step 1 Exam in both July 2008 and February 2009. Kober was unable to read all the exam questions in the time allowed. Despite this fact, Kober came very close to passing both exams. *See Kober's First Amended Complaint*, ¶ 20.

7.      Subsequently, Kober submitted his second request for the accommodation of additional time on the Step 1 Exam. On June 24, 2009, the NBME again denied Kober's request for accommodations. The NBME made this decision without ever having met, tested or evaluated Kober. However, based on recent changes to the ADA, Kober requested that the NBME reconsider its decision. Although the NBME stated in a letter dated July 30, 2009 that it would do so, the NBME failed to rule on Kober's request, thereby effectively denying his accommodations request. The three month window during which Kober could take the Step 1 exam after registering for it expired on August 31, 2009. *See Kober's First Amended Complaint*, ¶ 21-22.

### A.      Kober's Lawsuit Against the NBME

8.      Based on the NBME's failure to grant his request, on October 9, 2009, Kober filed suit against the NBME in the United States District Court for the Western District of Louisiana for violating Title III of the ADA (42 U.S.C. § 12189). Kober also claimed the NBME

**Plaintiff's Response to Defendant's Motion to Dismiss and Brief in Support**                              **Page 3**
C:\Users\brittany\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\ELQYONG9\draft response to
motion to dismiss (00391758-2).DOC

failed to assure that the USMLE Step 1 "is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills" pursuant to 28 C.F.R. § 36.309(b). *See Kober's First Amended Complaint*, ¶ 23-24.

9.      The NBME moved to dismiss this suit, arguing that because the NBME had not yet made a "final determination" denying his accommodation request that the case was not ripe for judicial review. On June 7, 2010, the Court dismissed Kober's complaint without prejudice, holding that the case was not ripe for decision. The Court specifically noted that Kober would endure no hardship from its decision. The Court reasoned that if Kober registers again for the test and requests accommodations that are granted, then he will not have suffered any injury. If he registers for the test and requests accommodations that are denied, then the Court stated that Kober could seek redress in Court. Unfortunately, however, AUCSM's discriminatory practices have precluded Kober from both registering for the Step 1 test and from obtaining a "final determination" from the NBME. *See Kober's First Amended Complaint*, ¶ 25.

## B.      Kober's Dismissal from AUCSM

10.      Based on the court's ruling, Kober, in a letter dated July 27, 2010, asked that the NBME make a final determination regarding his request for accommodations. The NBME replied on August 3, 2010, informing Kober that since the time period during which Kober could take the Step 1 exam had expired, Kober was required to once more register for the test before he could then seek accommodations. When Kober attempted, however, to register to take the exam, he was informed that he was no longer enrolled in a medical school and therefore could not

register for the test. Kober thus faces an impossible situation: he cannot register for the USMLE Step 1 exam (and thus request accommodations) because he is not enrolled in medical school; and he cannot continue his medical school education until he successfully completes the USMLE Step 1 exam. *See Kober's First Amended Complaint*, ¶ 26.

11.     Shortly thereafter, Kober received a letter from AUCSM dated August 15, 2010 from Natallia Chong, the Director of Clinical Student Affairs. Chong's letter stated that Kober had been withdrawn from medical school because he was AWOL (absent without official leave) for the May 2010 semester in violation of Section 12.8 of the Student Handbook. Section 12 of the Handbook provides that a student may request and obtain a long term leave from school for academic reasons, including preparing for and taking the Step 1 exam. Contrary to AUCSM's letter of August 15, 2010, every semester that Kober was absent in order to study for the Step 1 exam or to deal with the NBME on his request for accommodations, he requested that he be granted academic leave.  *See Kober's First Amended Complaint*, ¶ 27.

12.     AUCSM also complained that Kober had failed to comply with the conditions of the leaves granted him for the May 2009, September 2009 and January 2010 semesters because he was "required to make an attempt to sit for the USMLE Step 1 exam." AUCSM cited Section 28.8 of the Student Handbook for the proposition that any student who is granted an Academic Long Term Official Leave to take the Step 1 exam and who does not sit for the exam during the leave period will be dismissed on academic grounds. Of course, it was during these periods of official leave that Kober was attempting to sit for the exam but could not do so because his request for accommodations had been denied. It is clear that if Kober had passed the Step 1 exam then he would not have been dismissed from AUCSM. *See Kober's First Amended Complaint*, ¶ 27.

13.     When Kober discovered that he had been involuntarily withdrawn from medical school, he called AUCSM to discuss this matter. After several unsuccessful attempts, he finally was able to contact Cynthia Holden, who works in the MEAS office in Coral Gables, Florida. This was on September 2, 2010. Holden also holds the position of Authorized House counsel for the school. Kober asked Holden what he needed to do in order to appeal his involuntary withdrawal from school. Holden declined to answer Kober's questions and referred him to Pat Litwin, who also works in the MEAS section and who has the title of Liaison Official. Kober also inquired to Litwin about appealing his involuntary withdrawal. Litwin's response was that she was not authorized to answer that question. When Kober asked who he could to talk who was authorized to answer his questions, Litwin once more replied that she was unauthorized to answer that question. The only thing Litwin told Kober was that he could apply for readmission to the school. As a result, Litwin sent to Kober an application for readmission to AUCSM. *See Kober's First Amended Complaint*, ¶ 28-29.

14.     Because he was unable to get any answers to his questions, Kober had his attorney contact AUCSM. In an email to Holden dated September 8, 2010, Kober's attorney asked that Holden send to him the information necessary for Kober to appeal his dismissal to the Student Evaluation and Promotions Committee. Holden responded the following day and stated that Kober was not dismissed on academic grounds, but rather was "withdrawn" because of his "failure to maintain current enrollment status." On September 10, 2010, counsel for Kober replied to Holden and, among other things, asked that she confirm that Kober has exhausted his administrative remedies and has no right to an appeal. Holden confirmed, in an email dated September 15, 2010, that Kober did not have the right to an appeal because he was not dismissed but was withdrawn from school. Specifically, Holden stated that Kober failed to apply for a

seventh term of leave for the May [2010] semester and thus was withdrawn from enrollment pursuant to Section 12.8 of the Student Handbook. Holden again advised Kober to apply for readmission.  *See Kober's First Amended Complaint*, ¶ 30.

15.     Holden's statement that Kober had failed to apply for leave for the May 2010 semester is incorrect. Kober sent in his request for leave for every semester that he was absent while he dealt with the NBME. There had never been any problem in this regard. However, the last time he sent in his request (for the May 2010 semester) he never heard back from the school. Several times Kober attempted to contact Natallia Chong who works in the MEAS department. Despite the fact that he left several messages, Chong never returned his call. *See Kober's First Amended Complaint*, ¶ 31.

16.     Based on the choices before him, Kober decided to apply for readmission.  On November 3, 2010, AUCSM granted him conditional readmission. This letter came from Bruce Kaplan, D.O., the Chief Academic Officer for AUCSM. Dr. Kaplan is with the MEAS Department in Coral Gables, Florida.  The terms for readmission stated that Kober would have to (1) submit a request for leave for the January 2011 term on or before January 3, 2011; (2) sit for the USMLE Step 1 by March 25, 2011; (3) complete a Step 1 review course; and (4) fax to the school a passing score for the Step 1 exam by April 29, 2011, or be dismissed on academic grounds. *See Kober's First Amended Complaint*, ¶ 32.

17.     Shortly thereafter, Kober replied to AUCSM.  He stated that he certainly would be willing to apply for leave by the requested date and take a review course.  He stated, however, that he could not agree to the requirements that he take the Step 1 exam by March 25, 2011 and provide the school with a passing score by April 29, 2011, or agree to his dismissal on academic grounds. Kober explained that if he is readmitted to AUCSM, then his plan is to immediately

register for the Step 1 exam and request testing accommodations.  If the NBME grants that request, then he will sit for the Step 1 exam by March 25, 2011.  If the NBME denies his request, however, then it is his plan to refile his suit against it under the ADA. Kober further explained that because it is doubtful that this suit could be resolved in time to take the exam by March 25, 2011, if he agreed to all of the school's conditions then he would be agreeing to sit for the exam without accommodations – accommodations he believes he is entitled to under the ADA. *See Kober's First Amended Complaint*, ¶ 33.

18.    Rather than agree to conditions that deny him his rights under the ADA, Kober proposed the following to AUCSM. If the NBME grants his request for accommodations, then he will sit for the Step 1 exam by March 25, 2011. However, if the NBME denies his request, then he will refile his lawsuit against it within thirty days of the final determination by the NBME. Under this proposal, AUCSM would agree to keep Kober enrolled until the suit against the NBME is resolved. Finally, Kober stated that once the suit with the NBME is over, he will then take the Step 1 exam with or without accommodations, depending on how the court rules. AUCSM rejected Kober's proposal on November 22, 2010, despite the fact that Kober has paid the school over $244,000.00 in tuition. This letter was written by Dr. Bruce Kaplan. Kober called Dr. Kaplan on December 2, 2010, and asked if there was any way the two sides could work something out. Kober explained that the accommodations he was seeking from the NBME were the same ones granted to him by AUCSM. Dr. Kaplan replied that AUCSM would not extend Kober's leave regardless of the circumstances and that the school would not modify its policy for any reason. On December 22, 2010, in a letter from Dr. Kaplan, AUCSM withdrew its offer for readmission. *See Kober's First Amended Complaint*, ¶ 34.

## C. Kober's Allegations Against AUCSM

19.     Kober's first amended complaint is replete with allegations stating that AUCSM's dismissal of Kober from medical school violates the ADA.  All of these will not be repeated here.  The basic allegations are that Kober is an individual with a disability as defined by the American with Disabilities Act because he has a mental impairment that substantially limits one or more of his major life functions, namely, learning disabilities that substantially limit his major life functions of learning, reading, and writing.  Under the ADA, Kober is entitled to stay enrolled in medical school while he litigates with the NBME.  42 U.S.C. § 12102(2)(A).  *See Kober's First Amended Complaint*, ¶ 42-46.

20.     AUCSM discriminated against Kober by withdrawing him from the AUCSM and refusing to grant him a leave of absence pending the resolution of his ADA accommodation request with the NBME.  Kober made a formal, written request to AUCSM for accommodations.  Specifically, he requested that AUCSM keep him enrolled in school while he seeks test accommodations from the NBME.   Kober's request for accommodations is reasonable.  Although Kober requested this accommodation, AUCSM refused to grant it.  AUCMS's refusal to provide the reasonable accommodations Kober requested constitutes an illegal failure to accommodate a disabled person in violation of the ADA.  *See Kober's First Amended Complaint*, ¶ 51-52.

## II.  Motion to Dismiss Pursuant to Rule 12(b)(6)

21.     The party moving for a motion to dismiss bears the burden of showing that "plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief." *Baton Rouge Bldg. & Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986). A court must accept all well-pleaded facts

as true and view them in the light most favorable to the nonmoving party. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009); *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F. Supp. 2d 822, 827-28 (E.D. La. 2010).

22.    AUCSM moves that Kober was not dismissed because of his disability, but rather because he did not comply with its policies for a leave request. *See* AUCSM's *Memorandum in Support*, pg. 5 ("Kober was also only dismissed from AUC once he failed to comply with AUC's official leave policy by not submitting a seventh official leave request for the May 2010 Semester.") AUCSM is thereby arguing, through its motion to dismiss, that it had legitimate, non-discriminatory reasons for dismissing Kober from its medical school.

23.    AUCSM's motion is not consistent with the purpose of Rule 12(b)(6). A Rule 12(b)(6) motion does not attack the merits of the case; it "merely challenges the pleader's failure to state a claim properly." Wright & Miller, Fed. Prac. & Proc. § 1366 (2011). AUCSM does not question whether Kober states a claim against it; instead, it challenges the evidence (or what AUCSM's alleges is the lack thereof) corroborating Kober's claim. This is inappropriate, a motion to dismiss tests "the formal sufficiency of the statement for relief; it is not a procedure to be invoked to resolve a contest about the facts or the merits of a case. " *Johnson v. Coldwell Real Estate Corp.*, 2006 WL 2403539 (N.D. Miss. 2006).

24.    Kober has met the formal requirements to raise a claim under the ADA and the Rehabilitation Act. The elements of a cause of action under the Rehabilitation Act and the ADA

are generally the same. A plaintiff must plead: (1) The plaintiff qualified as a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; and (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her handicap.[2] *Carlin v. Trustees of Boston Univ.*, 907 F. Supp. 509, 510 (D. Mass. 1995)(citing *Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372, 1384 (10th Cir. 1981)).

25.     As described above, Kober has plead that his medical condition is a handicap as considered under the ADA and Rehabilitation Act, that he was otherwise qualified to be enrolled in AUCSM, and that he was intentionally excluded from participation and expelled by AUCSM because of his handicap. Kober has therefore met the pleading requirements of the Federal Rules of Civil Procedure. AUCSM argues that it had non-discriminatory motives for expelling Kober; however, this contention must be addressed by trier of fact.

26.     In a motion under Rule 12, this court must accept all of Kober's allegations as true and view them in the light most favorable to the nonmoving party. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). Regardless of what AUCSM contends, this court is to accept as true that Kober "made a formal, written request to AUCSM for accommodations;" that AUCSM subsequently expelled Kober; and that the reason for Kober's expulsion was because of his disability. *See Kober's Amended Complaint,* ¶ 51 *et seq.* As Kober has sufficiently pleaded the elements of all of his claims, AUCSM's motion should be denied.

### III.  This Court has Personal Jurisdiction over AUCSM.

27.     Once a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of establishing the district court's jurisdiction lies with the party seeking

---

[2] The Rehabilitation Act requires a plaintiff to allege that the program receives federal funds, and AUCSM does not contend that it does not receive such funds.

to invoke the court's jurisdiction. *Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp. 2d 866, 872 (E.D. Tex. 2008); *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000). Kober need not, however, establish jurisdiction by a preponderance of the evidence; a prima facie showing suffices. Further, a court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Hernandez v. Vanderbilt Mortg. & Fin., Inc.*, 2010 WL 1875796 (S.D. Tex. 2010); *Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006).

28.     Kober has amended his complaint to allege that jurisdiction for this action is granted under Louisiana's long-arm statute. Because Louisiana's long-arm statute extends jurisdiction to the full limits of due process, the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. La. Rev. Stat. Ann. § 13:3201(B); *DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559, 563 (E.D. La. 2005).

29.     Due process requires that a defendant have minimum contacts with a forum in order to be subject to its jurisdiction. The minimum contacts analysis asks whether the nonresident defendant purposefully availed himself of the benefits and protections of the forum state, thereby establishing "minimum contacts" with that forum state. *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994). Minimum contacts may give rise to specific personal jurisdiction or to general personal jurisdiction. *Id.*

### A.  General Jurisdiction

30.     Regardless of whether the lawsuit is related to the defendant's contacts with the forum, courts may exercise general jurisdiction over any lawsuit brought against a defendant "that has continuous and systematic general contacts" with the forum state. *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 506 (E.D. La. 2010); *see also Alpine View Co. v. Atlas*

*Copco AB,* 205 F .3d 208, 217 (5th Cir. 2000) (stating that in order to show contacts unrelated to the litigation are sufficient to satisfy due process, the contacts must be substantial, continuous, and systematic). "If a defendant has sufficient 'continuous and systematic' general contacts with the state, the forum may exercise general personal jurisdiction over the defendant for a 'cause of action [that] does not arise out of or relate to the [defendant's] activities in the forum state.'" *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 624 (5th Cir.1999) (*quoting Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)); *see also Omega Hosp., L.L.C. v. Bd. of Trustees of State of N. Carolina Teachers' & State Employees' Comprehensive Major Med. Plan,* 2008 WL 4286757 (E.D. La. 2008) ("General jurisdiction exists when a defendant's contacts with the forum state are … continuous and systematic.").

31.     In  determining whether general continuous and systematic contacts exists, a court should consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit rather than just those contacts that are related to the particular cause of action the plaintiff asserts. *Baragona v. Kuwait Gulf Link Transport Co.*, 594 F.3d 852 (11th Cir. 2010). To confer general jurisdiction, a defendant must have a business presence in the forum state. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375 (5th Cir.1987)). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *In re Chinese Manufactured Drywall Products Liab. Litig.*, 767 F. Supp. 2d 649, 657-58 (E.D. La. 2011). "The determination of what period is reasonable in the context of each case should be left to the court's discretion." *Morris v. B.C. Olympiakos, SFP*, 721 F.Supp.2d 546, 562 (S.D. Tex. 2010) (*quoting Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996)).

32.     AUCSM has continuous and systematic general contacts in the state of Louisiana. It actively recruits students in the state of Louisiana for its medical school. This recruitment includes sending flyers to several of the major universities in the state. The medical school has also sent recruiters to Louisiana to recruit undergraduate students to the medical school. As a result of AUCSM's active recruitment of Louisiana students, approximately 17% of Kober's medical school class came from Louisiana. Moreover, AUCSM operates one of its core clinical rotations at Brentwood Behavioral Health Company in Shreveport. Core clinical rotations are attended by medical students after they finish their first two years of medical school and after they pass the Step 1 Exam. Once they finish their core rotations and pass the Step 2 Exam, the medical students then graduate, as a student of AUCSM. Importantly, the medical student continues to pay his medical school tuition to AUCSM while he attends his clinical rotations. AUCSM also allows its students to attend elective clinical rotations at affiliated hospitals in Louisiana, including ones in Lake Charles and New Orleans. Likewise, AUCSM's students participate in an elective clinical rotation in emergency room medicine at the LSU medical center in Shreveport, Louisiana.   *See* the Declaration of Michael Steven Kober attached hereto as Exhibit A.

33.     It is evident that AUCSM has purposefully availed itself of conducting business in Louisiana. It advertises in Louisiana; it recruits in Louisiana; based on its recruiting and advertising efforts a significant number of its medical student derive from Louisiana; and it operates core and elective rotations for its medical school in Shreveport, Lake Charles and New Orleans. The Declaration of Yife Tien, in fact, admits that 66 of the clinical rotations of AUCSM's medical students in 2010 were completed in Louisiana. Based on its continued operation of clinical rotations in Louisiana one could certainly draw the reasonable inference that

AUCSM maintains contractual relationships with its affiliated hospitals where the rotations are conducted, including with the hospitals in Louisiana. Jurisdictional discovery, if the Court deems this necessary, would determine if this inference is correct. The Tien Declaration tries to downplay AUCSM's relationship to Louisiana by stating that "this training was conducted by the physicians and staff at the teaching hospitals and was rendered directly to the students without active participation by AUC." Tien Declaration, ¶ 9. This statement is inconsistent with the undisputed facts.  For instance, AUCSM stresses the importance of its clinical rotations on its website at http://aucmed.edu/current/ushospitals.html. Indeed, the website states that "[c]ore clerkships are the **foundation** of the student's clinical education framework." (emphasis added). Kober Declaration at ¶ 4. Moreover, the clinical rotations form the last half of the medical students' education at AUCSM; when they finish their core rotations and pass the Step 2 Exam, the students graduate with a degree from AUCSM. Thus, for a student at AUCSM who attends his clinical rotations in Louisiana, approximately one half of the time he spends in getting his medical degree from AUCSM occurs in Louisiana. Finally, the Tien Declaration ignores what appears to be obvious – and that is that there most likely is a contractual relationship between AUCSM and the hospitals where the rotations occur. Indeed, the AUCSM website labels these hospitals as "affiliated hospitals."  Furthermore, as noted in the Kober Declaration, AUCSM's medical students continue to pay their tuition to AUCSM, and not to the affiliated hospitals, while they attend their clinical rotations.

34.     The Second Circuit found general jurisdiction in a similar case in *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 570-572 (2d Cir. 1996). There, a nonresident defendant had sufficient contacts with Vermont to support general jurisdiction when, over a four-year period, the defendant's contacts with Vermont included ongoing relationships with five

authorized dealers for its products in the state, and conducted national advertising that reached Vermont. The defendant engaged in direct marketing to in Vermont, and frequently had employees in the state. The defendant, however, owned no property in Vermont and did not control its authorized dealers there. The court acknowledged that any one of these contacts alone would be insufficient, but taken together, they justified general personal jurisdiction.

### B.  Specific Jurisdiction

35.    Specific jurisdiction exists when the plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984); *Wilson,* 20 F.3d 644 at 647.

36.    All of Kober's causes of action arise from or are related to AUCSM's contacts with Louisiana, providing specific jurisdiction for this suit. A party is subject to specific, personal jurisdiction when it purposefully avails itself of the forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

37.    AUCSM purposefully advertises its school and its affiliated facilities in Louisiana to prospective students within Louisiana, including Kober. The very fact that Kober attended AUCSM is a result of AUCSM's advertising and recruitment of students in Louisiana. Advertising in solicitation of clients is the very type of "purposeful availment" considered by the Supreme Court in *Burger King*, and provides specific jurisdiction for this action. *See* e.g. *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)(Specific jurisdiction in Nevada found where the defendant "specifically targeted consumers in Nevada by running radio and print advertisements in Las Vegas.")

## IV. Venue

38.     All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, and a court is to view all allegations in "a light most favorable to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).

39.     For purposes of venue, a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

40.     As described above, this Court has personal jurisdiction over AUCSM. AUCSM operates an affiliated clinical rotation in Shreveport, Louisiana. Additionally, AUCSM advertises its school in Louisiana and solicits Louisiana residents. Should this Court find it has personal jurisdiction over AUCSM, venue is likewise proper.

## V. Prayer

41.     For the reasons stated above, Kober prays this Court denies Defendant's Motion to Dismiss, and upon trial on the merits, Kober prays for relief as stated in his Amended Complaint.

42.     Alternatively, Kober prays that this Court permit Kober to conduct for jurisdictional discovery to determine the extent of AUCSM's contacts with the state of Louisiana.

43.     Alternatively, Kober prays that, pursuant to 28 U.S.C. 1406(a), this Court transfer this matter to a district court within the Southern District of Florida. AUCSM is incorporated in the Southern District of Florida and it concedes that the Southern District of Florida has jurisdiction to hear this matter. Should this Court determine that it is either lacks jurisdiction or is

an improper venue, Kober prays that the Court exercises its discretion to transfer the matter to the Southern District of Florida.

Respectfully submitted,

KITCHENS, BENTON, KITCHENS & BLACK

By: s/ Clinton C. Black

Clinton C. Black (TA)
Bar Roll # 26604
2122 Airline Drive, Suite 200
Bossier City, Louisiana 71111
Telephone:     (318) 747-9636
Facsimile:     (318) 747-7679

MULLIN HOARD & BROWN, LLP
Robert R. Bell, TSBN 00787062
John G. Turner, TSBN 20320550
Richard Biggs, TSBN 24064899
P.O. Box 31656
Amarillo, Texas 79120
Telephone:     (806) 372-5050
Facsimile:     (806) 372-5086

*Attorneys for Plaintiff, Michael Kober*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing Response to Defendant's Motion to Dismiss has been served upon AUCSM's counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 12th day of October, 2011.

s/ Clinton C. Black                
Clinton C. Black
