UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA – SHREVEPORT DIVISION

| | | |
|---|---|---|
| MICHAEL STEVEN KOBER | * | CIVIL ACTION NO.: 11-CV-00623 |
| | * | |
| VERSUS | * | JUDGE: STAGG |
| | * | |
| AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V., INC. | * | MAGISTRATE: HORNSBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.'S
MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

/s/ *Edward R. Wicker, Jr.*
Edward R. Wicker, Jr., 27138, T.A.
BARRASSO USDIN KUPPERMAN
　　FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

And

Hendrik G. Milne (admitted *Pro Hac Vice*)
Renee R. Tischler (admitted *Pro Hac Vice*)
Anna A. Mance (admitted *Pro Hac Vice*)
ABALLI MILNE KALIL, P.A.
2250 Suntrust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929
*Attorneys for American University of the Caribbean N.V., Inc.*

# TABLE OF CONTENTS

                                                                                                                                                         Page

FACTUAL BACKGROUND ........................................................................................... 1

    AUC ..................................................................................................................... 1

    Kober ................................................................................................................... 2

ARGUMENT ................................................................................................................... 5

    Failure to State a Claim Upon Which Relief Can Be Granted ............................. 5

    Damages .............................................................................................................. 7

    Standing ............................................................................................................... 8

    Lack of Personal Jurisdiction Over AUC ............................................................ 9

    Improper Venue ................................................................................................. 12

CONCLUSION .............................................................................................................. 14

CERTIFICATE OF SERVICE ....................................................................................... 14

# **TABLE OF AUTHORITIES**

## **CASES**

Page

*Ashcroft v. Iqbal*, 556 U.S. 662; 129 S. Ct. 1937 (2009) ............................................................. 5,12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 8

*Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) ............................... 9

*Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010) ............................................................................................................................... 9

*Estate of Carr ex rel. Carr v. United States*, 482 F. Supp. 2d 842 (W.D. Tex. 2007) ................................................................................................................................. 1

*Gallant v. Trustees of Columbia University in City of New York*, 111 F. Supp. 2d 638 (E.D. Pa. 2000) ............................................................................................................. 10

*Gehling v. St. George's Sch. Of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985) ............................ 10

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ..................................... 9

*Ross v. Creighton University*, 740 F. Supp. 1319 (N.D. Ill. 1990) ............................................... 10

*Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278 (D. Kan. 2001) ....................................................................................... 10

*Smith v. Fortenberry*, 903 F. Supp. 1018 (E.D. La. 1995) ........................................................... 12

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................................... 8,9

## **STATUTES**

28 C.F.R. § 36 .................................................................................................................................. 8
28 C.F.R. § 1406 ........................................................................................................................ 13,14
La. Rev. Stat. 13:3201(B) ................................................................................................................ 9
F.R.C.P. 12(b)(2),(3),(6) ..................................................................................................... 1,9,12,14
U.S.C. 28 § 1391(b) .................................................................................................................. 12,13
U.S.C. 28 § 1391(c) ................................................................................................................ 1,12,14
U.S.C. 28 § 1406(a) ............................................................................................................ 1,12,13,14

Defendant, American University of the Caribbean, N.V. ("AUC"), respectfully moves pursuant to Rule 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a) for an order dismissing the First Amended Complaint for Injunctive Relief, Damages, and Demand for Jury Trial (the "Amended Complaint") of Michael Steven Kober ("Kober").[1] For the following reasons, the motion should be granted.

## FACTUAL BACKGROUND

### AUC

This dispute concerns a claim by a former student, Kober, against a medical school, known as The American University of the Caribbean School of Medicine (the "Medical School"), located on the island of St. Maarten in the Netherlands Antilles. Defendant AUC operated the Medical School from February 1999 to August 2011.[2]

The Medical School's students receive their basic sciences education on the campus in St. Maarten in their first two years. This is followed by a clinical education component which takes place over the next two years. The clinical education component is received at affiliated hospitals mostly located in the United States, as most of the Medical School's students go on to become U.S. medical doctors.

---

[1] If the Court deems it necessary to consider facts contained herein determined not to be pled in the Amended Complaint, the Court can treat the motion as one for summary judgment. *Estate of Carr ex rel. Carr v. United States*, 482 F. Supp. 2d 842, 847 (W.D. Tex. 2007) (court may convert a motion to dismiss to a motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, when considering evidence external to the pleadings).

[2] AUC sold substantially all of its assets in August 2011 and no longer operates the Medical School. Kober's counsel was notified of this sale, and the relevant portions of the agreement were provided to him. Kober, however, states in his Amended Complaint that "AUCSM claims it has sold the medical school. No formal discovery has been conducted on this issue and this issue is still being investigated." Amended Complaint, p. 2, n. 1. AUC has been completely forthcoming with information pertaining to the sale. Formal discovery will shed no additional light on the subject.

1

**Kober**

Kober started his medical education at AUC in 2005. While completing his first two years of medical school on the island of St. Maarten, Kober requested and received special testing accommodations in compliance with the Americans with Disabilities Act (the "ADA") and Rehabilitation Act, based on information Kober provided AUC regarding his alleged disability. Amended Complaint, p. 8, ¶ 17.

Kober, however, was unable to begin the second part of his medical education, the clinical rotations, because he did not pass the standardized test required of all international medical students, Step 1 of the United States Medical Licensing Examination ("USMLE Step 1"). Amended Complaint, p. 8, ¶ 17.

The USMLE Step 1 is offered by the National Board of Medical Examiners (the "NBME"), which is not related to or affiliated with the Medical School or AUC. The NBME is a national not-for-profit entity which tests all intending U.S. physicians. It establishes its own testing standards and requirements. The NBME is not a party to this action; however, the essence of Kober's complaint is with the NBME, not AUC. The Amended Complaint thus cites to many grievances Kober has against the NBME for alleged violations of the ADA for not granting him special testing accommodations.

Kober's relationship with the NBME began in 2008 when Kober first applied to take the USMLE Step 1 with special testing accommodations. The NBME responded that Kober had not provided adequate information to receive such accommodations, and thus denied his request. Amended Complaint, pp. 8-9, ¶¶ 18-22.

Instead of submitting the requested information, Kober sat for the USMLE Step 1 Exam in July 2008, and failed. Despite this failed attempt, Kober still did not submit the requested

information but sat for the test again in February 2009. Again, he failed. Amended Complaint, p. 9, ¶ 20.

After his repeated failures, Kober again applied to the NBME to take the USMLE Step 1 with special testing accommodations. Again, the NBME responded that he needed to provide additional information. Instead of providing it, Kober sat for the test a third time, and failed. Amended Complaint, p. 5, ¶ 9.

Finally, after three failed attempts, in May 2009, Kober sent the NBME certain additional information, a report from a clinical psychologist. Amended Complaint, p. 9, ¶ 21. The NBME, however, responded in June 2009 that this information was still incomplete. Amended Complaint, p. 10, ¶ 22.

During this time, through no fault of AUC, Kober was in limbo since he had completed his first two years of medical school, but could not continue without first passing the USMLE Step 1. Whether or not Kober or any student of the Medical School passes the USMLE Step 1 has nothing to do with any decision made by AUC.

When a student needs time to take the USMLE Step 1 outside of a normal semester, AUC's policy is that the student takes an official leave of absence in compliance with the Student Handbook. Student Handbook attached at Exhibit "A." The Student Handbook states that "students who are absent without an **approved** Official Leave at any time during a term of enrollment will be considered AWOL and will be automatically withdrawn from the register of enrolled students." Exhibit "A," Section 12.8 (emphasis added); Amended Complaint, p. 12, ¶ 27. The Declaration of Cynthia A. Holden, attached hereto as Exhibit "B,"[3] establishes that

---

[3] The declaration of Cynthia Holden, Esq. attached hereto as Exhibit "B" is submitted to provide context for the Court. It is not meant to convert this motion to one for summary judgment.

3

close oversight of student status is necessary for the Medical School to comply with U.S. Department of Education requirements for participation in the Federal student loan program.

Generally, only three official leaves of absence are granted so that students will be afforded three attempts to pass USMLE Step 1. If he or she fails to do so after that time period, the student is subject to dismissal from the Medical School on academic grounds consistent with physician licensure requirements of some States. Exhibit "A," Section 15.1. In "extraordinary circumstances" a fourth official leave is sometimes granted. Exhibit "A," Section 15.6. Kober, however, applied for and received six official leaves of absence to pursue his efforts to pass the USMLE Step 1 and seek test accommodations from the NBME.

It is undisputed that Kober did not receive approval for an alleged seventh request for an official leave of absence. Amended Complaint, p. 12, ¶ 27 and Amended Complaint, p. 14, ¶ 31.

The number of official leaves of absence allowed for by the Medical School was not arbitrarily determined. It is based on compliance with regulations and guidelines established by the U.S. Department of Education as a condition of continued participation in the William D. Ford Federal Direct Loan program. Exhibit "B," ¶ 11. Further, AUC's policies reflect the stringent licensure requirements for physician licensure in some states. In states such as Texas, an application for physician licensure will not be granted if the applicant has more than three test attempts on USMLE Step 1. AUC has deliberately established academic criteria for its medical education program so that all of its graduates will meet the licensure requirements of all fifty states. Exhibit "B," ¶ 11.

## ARGUMENT

### Failure to State a Claim Upon which Relief can be Granted

"[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662; 129 S. Ct. 1937, 1949 (2009) (internal citation omitted). In addition, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft*, 129 S. Ct. at 1950 (internal citation omitted).

This is a problem for Kober as the facts he alleges do not support his claims and conclusory statements are not enough. *Ashcroft*, 129 S. Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to the relief").

Kober's entire complaint is founded on the claim that "AUCSM has illegally refused and is illegally refusing to accommodate Kober's learning disability by dismissing Kober from medical school because he has yet to pass the United States Medical Licensing Exam. . . ." Amended Complaint, p. 1, ¶ 1, and that but for his inability to pass the "Step 1 exam . . . he would not have been withdrawn from AUCSM." Amended Complaint, p. 13, ¶ 28.

Not a single fact, however, appears anywhere in the Amended Complaint to support these conclusions. Instead, the facts provided by Kober contradict them.

The supported conclusion is that Kober's dismissal had nothing to do with his disability, but stemmed from his failure to follow the Medical School's clear policy on official leaves of absence. It is evident that had Kober passed the USMLE Step 1, while actively enrolled in medical school and on official leave, he would not have been dismissed.

The facts alleged by Kober supporting that there was no ADA or Rehabilitation Act violation are the following: 1. AUC provided Kober with special testing accommodations while he was enrolled in medical school because of his alleged disability; 2. AUC's policy is to give only three official leaves of absence, possibly four in "extraordinary circumstances," to a student attempting to pass the USMLE Step 1 exam and Kober received every official leave request he properly applied for (six in total); and 3. Kober failed the USMLE Step 1 Exam three times and was not dismissed after any of them.

The Medical School's official leave policy states "[s]tudents who are absent without an **approved** Official Leave at any time during a term or enrollment will be considered AWOL, and will be immediately and automatically withdrawn from the register of enrolled students." AUC Official Leave Policies, ¶ 1.7; Exhibit "A," section 12.8. (emphasis added).

Kober admits he never received approval for an official leave for the May 2010 semester, which he knew was required. Amended Complaint, p. 14, ¶ 31.

There was thus nothing arbitrary or discriminatory about Kober's withdrawal. Nor did it result from his inability to pass the USMLE Step 1.

In addition, after Kober was withdrawn, AUC offered to readmit him. This would have given Kober another chance to apply for and take the USMLE Step 1 exam. The offer, however, was rejected.[4] Amended Complaint, pp. 14-15, ¶ 32-33.

Kober's real complaint, if any, is with the NBME.

---

[4] Kober claims that the offer was unreasonable because it would not have given him adequate time to litigate against the NBME if it turned down his request for special testing accommodations. The timeline, however, provided in AUC's offer was reasonable, complied with its Student Handbook, and was based on the time it needed to submit a passing score so that a student could be placed in clinical rotations for the following semester. Exhibit "A," Section 12.5.

6

While AUC sympathizes with the predicament Kober has found himself in, it could not control the NBME's decisions. Nor can it change the fact that Kober failed time and time again to send the NBME the information it requested and took the USMLE Step 1. Further, AUC is not responsible for Kober's negligence by ignoring AUC's clearly defined rules and procedures.

The Amended Complaint should therefore be dismissed in its entirety.

## Damages

Kober claims that he was damaged by AUC since he cannot take the USMLE Step 1 because he is no longer enrolled in medical school and "Kober must pass the USMLE Step 1 Exam before he may continue with his medical school education." Amended Complaint, p. 2, ¶ 1. In addition, Kober states that "[f]ailure in the taking and passing of the USMLE exam necessarily precludes an individual from employment as a medical doctor in the United States." Amended Complaint, p. 20 ¶ 47.

As stated above, after Kober was withdrawn from the Medical School, AUC offered Kober an opportunity to be readmitted so that he could apply for and take the USMLE Step 1 Exam. Kober turned the offer down.

Further, Kober says he cannot pass the USMLE Step 1 without special testing accommodations. AUC has no control over whether the NBME will ever grant Kober those accommodations.

In addition, AUC has no control over whether Kober will ever be readmitted into the American University of the Caribbean School of Medicine, since it no longer operates the Medical School.

The damages Kober alleges are also speculative, since even if he is readmitted into medical school, he may never pass the USMLE Step 1.[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level").

In addition, the fact that Kober has already failed the USMLE Step 1 three times likely destroys his chances of ever obtaining a residency since there are fewer residency spots than there are medical school graduates and performance on the USMLE Step 1 plays heavily on the decision of who will get those spots. Exhibit "B.", p. 2, ¶ 6; Charting Outcomes in the Match by National Resident Matching Program and Association of American Medical Colleges, 4th edition, August 2011. Obtaining and completing a residency is a requirement for becoming a licensed physician.

Kober's request for damages for violations of the Rehabilitation Act should be dismissed.

### Standing

"[The Plaintiff] bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). In order for Kober to have standing for injunctive relief, he "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; **and it must be**

---

[5] Kober cites to 28 C.F.R. § 36 app. A in an attempt to convince the Court that it is a given that he will be granted special testing accommodations by the NBME if he is readmitted into the Medical School and thus will pass the USMLE Step 1 exam. The Appendix, however, is meant only to provide guidance and is not incorporated into the actual regulation. Further, the NBME is not a party to this action. This issue does not belong in this case. The fact that it is, demonstrates that Kober's grievances are primarily against the NBME and not AUC.

**likely that a favorable judicial decision will prevent or redress the injury.**" *Summers v. Earth Island Inst.*, 555 U.S. 488, 1149 (2009) (emphasis added).

In this instance, a favorable judicial decision will not prevent or redress the injury, as even if an injunction is entered, AUC will be unable to let Kober back into the Medical School. AUC has sold substantially all of its assets and no longer operates the Medical School.

The Amended Complaint should be dismissed for lack of standing.

### Lack of Personal Jurisdiction Over AUC

If the Complaint is not dismissed under Rule 12(b)(6), Federal Rules of Civil Procedure, then the action should be dismissed under 12(b)(2).

Kober alleges that the Court has personal jurisdiction over AUC under La. R.S. 13:3201(B), which provides that "[i]n addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."

Thus, Kober has alleged that the Court has general personal jurisdiction over AUC and, therefore, AUC's contacts with Louisiana are "substantial," "continuous," and "systematic." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010).

"The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (internal citations omitted); *see also Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003) (court found it did not have

9

general personal jurisdiction over defendant who had federal operating authority in Texas, routinely arranged and received interline shipments to and from Texas, and sent sales people to Texas on regular basis because the contacts were not substantial enough to justify subjecting it to suit in Texas).

Indeed, courts repeatedly have held that a university from a nonforum state is not subject to the general jurisdiction of a forum state. *Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282 (D. Kan. 2001); *Gallant v. Trustees of Columbia University in City of New York,* 111 F. Supp. 2d 638 (E.D. Pa. 2000); *Ross v. Creighton University*, 740 F. Supp. 1319 (N.D. Ill. 1990).

The case of *Gehling v. St. George's Sch. Of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985) is directly on point. In *Gehling*, an international medical school located in Grenada was sued by the parents of a Pennsylvania student after he passed away. The court there

> held that St. George's School of Medicine, a Caribbean institution, did not have a sufficient nexus to Pennsylvania to subject the school to general jurisdiction despite the fact that St. George's advertised in national newspapers that circulated in Pennsylvania; counted Pennsylvania residents among its student body; sent school representatives to Philadelphia as part of a 'media swing' intended to raise St. George's profile; and entered into an agreement with a Pennsylvania college to establish a joint international program combining pre-medical studies in Pennsylvania with medical training in Grenada.

*Id.* at 542-43 *(quoting from Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council,* 152 F. Supp. 2d 1278, 1283 (D. Kan. 2001)).

Further, the court noted that

> the fact that some of St. George's students are Pennsylvania residents does not signify a relevant business contact. Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the

> student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment.

*Id.*

Like St. George's contacts with Pennsylvania, AUC's contacts with Louisiana are not, nor have they ever been, "substantial," "continuous," or "systematic":

AUC does not, nor has it ever, had an office in Louisiana. Declaration of Yife Tien attached hereto as Exhibit "C," ¶ 8.

AUC is not registered to do business in Louisiana. Exhibit "C," ¶ 9.

None of AUC's bank accounts are located in Louisiana. Exhibit "C," ¶ 10.

None of AUC's employees, directors or officers lives in Louisiana. Exhibit "C," ¶ 11.

AUC has never before sued or been sued in Louisiana. Exhibit "C," ¶ 12.

AUC has no current contacts with Louisiana. Exhibit "C," ¶ 13.

Historically, AUC operated an international medical school. Its students came from all around the world. A small portion of these students came from Louisiana (approximately 6.8% of Kober's incoming class was from Louisiana, not 17% as he alleges). Exhibit "C," ¶ 14.

AUC, however, never rendered any services to these students in Louisiana. Instead, those students were educated in St. Maarten by AUC. Exhibit "C," ¶ 14.

In their third and fourth years of medical school, AUC's students underwent clinical training at hospitals primarily in the United States. The vast majority of AUC's students underwent their clinical training at teaching hospitals in the Northeastern region of the United States. Very few rotated in Louisiana. For example, in 2010 of the 1,516 core rotations completed, only 27 were completed in Louisiana. In addition, of the 1,794 elective rotations completed, only 39 took place in Louisiana. Exhibit "C," ¶ 15.

11

The fact that a student completes a clerkship in Louisiana does not mean that he or she will spend his or her entire third and fourth year of medical school in Louisiana, as Kober asserts. Clerkships range in length from 4 to 12 weeks. Exhibit "C," ¶ 16.

In addition, clerkship training was conducted by the physicians and staff at the teaching hospitals and was rendered directly to the students without active participation by AUC. Exhibit "C," ¶ 15.

Kober never completed any rotations anywhere, let alone Louisiana. Exhibit "C," ¶ 17.

For the reasons stated above there is also no specific personal jurisdiction over AUC. None of Kober's causes of action as alleged arise from or relate to AUC's contacts with Louisiana. *Ashcroft*, 129 S. Ct. at 1950 (internal citation omitted) ("determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense").

Kober has not satisfied the requirements of general or specific personal jurisdiction and the Amended Complaint should be dismissed.

## **Improper Venue**

If the Amended Complaint is not dismissed under Rule 12(b)(6) or 12(b)(2), Federal Rules of Civil Procedure, then the action should be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. It is Kober's burden to show otherwise. *Smith v. Fortenberry*, 903 F. Supp. 1018, 1020 (E.D. La. 1995) (internal quotations omitted) ("when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue").

The Amended Complaint states in conclusory fashion that venue is proper under 28 U.S.C. § 1391(c). 28 U.S.C. 1391(c), however, simply defines "resides" under the statute. It does not prescribe venue. Venue is therefore not properly pled.

12

However, even if Kober had properly pled the appropriate venue provision, 28 U.S.C. 1391(b), the Western District of Louisiana would still be inappropriate because he has not pled facts sufficient to support venue. 28 U.S.C. 1391(b) provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

AUC does not "reside" in the Western District of Louisiana. A substantial part of the events or omissions giving rise to Kober's claim did not take place in the Western District of Louisiana. In fact, as stated above, none of the events or omissions giving rise to Kober's claim took place in the Western District of Louisiana. *See* Exhibit "C." There is also a judicial district where the action may be brought, the Southern District of Florida, where AUC does reside as it is a foreign corporation registered to do business there.

The Complaint should thus be dismissed for lack of venue or transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a), which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

## Conclusion

The Amended Complaint of Michael Steven Kober against American University of the Caribbean, N.V. should be dismissed for lack of standing or under Rule 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a).

Respectfully submitted,

/s/ Edward R. Wicker, Jr.
Edward R. Wicker, Jr., 27138, T.A.
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

And

Hendrik G. Milne (admitted *Pro Hac Vice*)
Renee R. Tischler (admitted *Pro Hac Vice*)
Anna A. Mance (admitted *Pro Hac Vice*)
ABALLI MILNE KALIL, P.A.
2250 Suntrust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929
*Attorneys for American University of the Caribbean N.V., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the plaintiff's counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 1st day of November, 2011.

/s/ Edward R. Wicker, Jr.

679820_1