UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA – SHREVEPORT DIVISION

| | | |
|---|---|---|
| MICHAEL STEVEN KOBER | * | CIVIL ACTION NO.: 11-CV-00623 |
| | * | |
| VERSUS | * | JUDGE: STAGG |
| | * | |
| AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V., INC. | * | MAGISTRATE: HORNSBY |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant, American University of the Caribbean, N.V., ("AUC") files its Reply to AUC's Motion to Dismiss Plaintiff's First Amended Complaint (the "Reply"), and states:

Plaintiff, Michael Steven Kober's ("Kober") response to AUC's Motion to Dismiss Plaintiff's First Amended Complaint (the "Response") [D.E. 31] is little more than a recitation of the First Amended Complaint for Injunctive Relief, Damages and Demand for Jury Trial (the "Amended Complaint") [D.E. 21]. The Amended Complaint should be dismissed. Kober was not withdrawn because of his disability, but because he did not follow the procedures detailed in AUC's Student Handbook. There was no wrongdoing on the part of AUC. Nor has any been alleged. Kober is searching for someone to blame for his predicament.

**LAW AND ARGUMENT**

**1. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Kober's Response points to no pleaded facts which bring his claim from "plausible" to "probable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Further, when "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal citation omitted). All Kober has done in his Response is recite the law that AUC

already provided the Court and states that he has pled enough, pointing to the same insufficient conclusory allegations. This, pursuant to the pleading standards established in *Twombly* and *Iqbal*, is not enough. *Ashcroft*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). (internal quotations omitted).

Kober predicates his entire Amended Complaint on the allegation that he "made a formal, written request to AUCSM for accommodations; that AUCSM subsequently expelled Kober, and that the reason for Kober's expulsion was because of his disability." *See* Kober's Amended Complaint, ¶ 51. [D.E. 21]. No additional information is provided on how this expulsion (which Kober admits elsewhere was a "withdrawal") was in any way related to Kober's disability. Thus, all Kober has really said is that he has a disability and was unrelatedly "withdrawn" from medical school. No facts supporting wrongdoing on the part of AUC are provided.

In fact, the allegations, as pled by Kober, demonstrate otherwise. Kober admits: (1) AUC provided Kober with special testing accommodations while he was enrolled in medical school because of his alleged disability; (2) AUC's policy is to give only three official leaves of absence, possibly four in "extraordinary circumstances," to a student attempting to pass Step 1 of the United States Medical Licensing Examination (the "USMLE Step 1 Exam") and Kober received every official leave request he properly applied for (six in total); (3) Kober failed the USMLE Step 1 Exam three times and was not dismissed after any of them; and (4) after being "withdrawn" from medical school because of his failure to apply for an official leave of absence in accordance with the Student Handbook, Kober was offered readmission, which would have

given Kober another shot at the USMLE Step 1 Exam and standing to pursue any grievances he may have against the National Board of Medical Examiners (the "NBME").

Further, Kober has not pled the formal requirements to raise a claim under the ADA and the Rehabilitation Act. The third element of an ADA and Rehabilitation Act claim requires that the plaintiff plead that he "is being excluded from participation in, being denied the benefit of, or being subjected to discrimination under the program *solely by reason of his or her handicap.*" *Carlin v. Trustees of Boston Univ.*, 907 F. Supp. 509, 510 (D. Mass 1995). (emphasis added). Kober has only pled that he is being excluded from participation in medical school and that he has a disability. He has not pled that his exclusion resulted *solely by reason* of his handicap.

He has, however, pled that his withdrawal resulted from his failure to follow the Student Handbook. Kober admits that "the last time he sent in his request [for an official leave of absence] (for the May 2010 semester) he never heard back from the school." Response, p. 7, ¶ 15. [D.E. 31]. The Student Handbook provides that "[s]tudents who are absent without an **approved** Official Leave at any time during a term or enrollment will be considered AWOL, and will be immediately and automatically withdrawn from the register of enrolled students." *See* Student Handbook attached to Motion at Exhibit "A," section 12.8. (emphasis added).

As Kober has not made the connection between any wrongdoing on the part of AUC and his withdrawal from medical school, he has not sufficiently alleged a cause of action under the Rehabilitation Act and the American with Disabilities Act (the "ADA"). The Amended Complaint should be dismissed.

### 2. Damages

Kober's damages claim assumes that he would have passed the USMLE Step 1 Exam if not for his withdrawal from AUC. AUC, however, has nothing to do with the NBME or the

3

USMLE Step 1 Exam. The NBME is an independent national not-for-profit entity which tests all intending U.S. physicians. It is not related to or affiliated with the medical school or AUC.[1]

Many medical school students pay for their first two years of medical school only to never further their medical careers as a result of their inability to pass the USMLE Step 1 Exam. This is of no fault of AUC's.

In addition, AUC's offer to readmit Kober would have given Kober the opportunity to continue his medical education and again sit for the USMLE Step 1 Exam. It would have also given him standing so that he could pursue his lawsuit against the NBME if it again denied his request for special testing accommodations. Kober rejected this offer. Kober admits he will accept nothing less than readmission into medical school in perpetuity so that he can repeatedly make attempts to take the USMLE Step 1 Exam with special testing accommodations. This is not relief contemplated by the Rehabilitation Act and/or ADA.

### 3. Objections to AUC's Evidence

Kober incorrectly objects to the Court considering all of AUC's evidence used in support of its Motion to Dismiss the Amended Complaint (the "Motion") [D.E. 29]. They are not, as Kober claims, all "outside the pleadings." Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (the "Response"), p. 10, ¶ 23. [D.E. 31].

a. The Student Handbook should be considered as part of the pleadings. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations and citations omitted).

---

[1] Like in the Amended Complaint, most of the grievances cited in the Response are directed at the NBME, not AUC.

4

Throughout the Amended Complaint, Kober refers and cites to AUC's Student Handbook. For example, on page 12 of the Amended Complaint, Kober writes "Section 12 of the [Student] Handbook provides that a student may request and obtain a long term leave from school for academic reasons, including preparing for and taking the Step 1 exam." Kober, however, did not attach the Student Handbook to his Amended Complaint. Because it is central to Kober's claim, as it outlines the procedure for official leaves of absence, AUC submitted the Student Handbook to the Court with its Motion to Dismiss.

    b.    The Declaration of Yife Tien is offered in support of AUC's motion to dismiss for lack of personal jurisdiction. "In making its determination [on a motion to dismiss for lack of personal jurisdiction], the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of ... recognized [discovery] methods." *DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559, 563 (E.D. La. 2005) (internal quotations omitted). The Declaration of Yife Tien should therefore be considered.

    c.    The Press Release Regarding the Sale of AUC's Assets was provided so that the Court would be aware of all circumstances surrounding the case. AUC does not want to waste the Court's time and resources as AUC can no longer provide Kober with the primary relief he is seeking, readmission into medical school, since it no longer operates the medical school. In addition, Yife Tien, the President and Chief Operating Officer of Medical Education Services, Inc. ("MEAS"), the U.S. subsidiary of AUC, has sworn to the fact that substantially all of AUC's assets have been sold. *See* Declaration of Yife Tien attached to the Motion at Exhibit "C." There is therefore no hearsay problem.

    d.    The Declaration of Cynthia Holden, as stated in the Motion, was offered to provide the Court with context in this very specialized area, *i.e.*, the relationship between the

USMLE Step 1 Exam and AUC's policy on official leaves of absence. *Ashcroft*, 129 S. Ct. at 1950 (internal citation omitted) ("determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense").

In addition, AUC stated in its Motion that while it did not intend for its Motion to be one for summary judgment, the Court, if it found necessary, could treat it as such. Motion to Dismiss, p. 1, fn. 1. [D.E. 29].

### 4. Personal Jurisdiction

#### a. General Personal Jurisdiction

Kober does not address the fact that there is no case anywhere to support general jurisdiction over a defendant university from a nonforum state. *Corrales Martin v. Clemson Univ.*, 2007 WL 4531028 (E.D. Pa. Dec. 20, 2007) (court found that there are no cases in which a "defendant university from a nonforum state has been held subject to the general jurisdiction of a forum state"); *see also Gallant v. Trustees of Columbia University*, 111 F. Supp. 2d 638, 641 (E. D. Pa. 2000), (explaining that general participation in the type of interstate activity in which any nationally prominent university would engage does not indicate that a particular university purposely directed its activities, or availed itself of, the forum state).

Further, the cases Kober cites to support his position that there is general jurisdiction over AUC are not on point. None involve a nationally prominent university like the medical school and all are distinguishable for numerous other reasons. The primary case Kober relies on is *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996), where a Vermont insurance company sued a manufacturer of building materials for breach of contract and negligence in Vermont. The manufacturer, unlike AUC, had substantial and continuous contacts with Vermont as it was registered to do business there, had a Vermont sales

identification number, and filed Vermont income and sales tax returns. *Metropolitan Life Ins. Co.*, 84 F.3d at 566. AUC has none of those things.

Kober, in addition, incorrectly tries to distinguish this case from *Gehling v. St. George's Sch. Of Medicine, Ltd.*, 773 F.2d 539 (3rd Cir. 1985) by arguing that St. George's and AUC differ in the curriculum they provide their students. The medical school that AUC operated and St. George's are extremely similar. The students at both receive their basic sciences education on the campuses of the universities' in the Caribbean during their first two years of medical school. This is followed by a clinical education component which takes place over the next two years. The clinical education component is received at affiliated hospitals mostly located in the United States. In addition, the essential facts on which the court in *Gehling* based its decision that it did not have general jurisdiction over the defendant are very similar to the facts here. The court there

> held that St. George's School of Medicine, a Caribbean institution, did not have a sufficient nexus to Pennsylvania to subject the school to general jurisdiction despite the fact that St. George's advertised in national newspapers that circulated in Pennsylvania; counted Pennsylvania residents among its student body; sent school representatives to Philadelphia as part of a 'media swing' intended to raise St. George's profile; and entered into an agreement with a Pennsylvania college to establish a joint international program combining pre-medical studies in Pennsylvania with medical training in Grenada.

*Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1283 (D. Kan. 2001).

    b. **Specific Jurisdiction**

It is Kober's burden to properly plead that the Court has personal jurisdiction over AUC. *Kevlin Sevices, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) ("[t]he plaintiff bears the burden of establishing the court's personal jurisdiction over the nonresident defendant").

Kober did not sufficiently plead that the Court has personal jurisdiction over AUC. Nor has he made a sufficient rebuttal.

None of Kober's causes of action arise from or are related to AUCM's contacts with Louisiana. *See* Declaration of Yife Tien attached to the Motion at Exhibit "C." Whether or not AUC advertises and recruits from Louisiana has nothing to do with whether Kober was "withdrawn" from medical school as a result of his disability.

### 5. Venue

Kober has not properly pled venue. It is his responsibility to do so. *Smith v. Fortenberry*, 903 F. Supp. 1018, 1020 (E.D. La. 1995) (internal quotations omitted) ("when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue").

Further, the Court does not have personal jurisdiction over AUC and thus for purposes of venue, AUC does not reside in Louisiana. The Amended Complaint should be dismissed for lack of venue or transferred to the Southern District of Florida, where venue is proper.[2]

### CONCLUSION

The Amended Complaint of Michael Steven Kober against American University of the Caribbean, N.V. should be dismissed for lack of standing or under Rule 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a).

---

[2] In Kober's prayer for relief he states that AUC has conceded that "the Southern District of Florida has jurisdiction to hear this matter." Response, p. 23, ¶ 56. This is incorrect. AUC has conceded only that the Southern District of Florida would be a proper venue.

Respectfully submitted,

/s/ Renee R. Tischler                               /s/ Edward R. Wicker, Jr.
Hendrik G. Milne (admitted *Pro Hac Vice*)           Edward R. Wicker, Jr., 27138, T.A.
Renee R. Tischler (admitted *Pro Hac Vice*)          BARRASSO USDIN KUPPERMAN
Anna A. Mance (admitted *Pro Hac Vice*)                FREEMAN & SARVER, L.L.C.
ABALLI MILNE KALIL, P.A.                             909 Poydras Street, Suite 2400
2250 Suntrust International Center                   New Orleans, Louisiana 70112
One Southeast Third Avenue,                          Telephone: (504) 589-9700
Miami, Florida 33131                                 Facsimile: (504) 589-9701
Telephone: (305) 373-6600

*Attorneys for American University of the Caribbean N.V., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Reply to Plaintiff's Opposition to American University of the Caribbean N.V., Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint for Injunctive Relief, Damages, and Demand for Jury Trial has been served upon the plaintiff's counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 20th day of December, 2011.

*s/ Edward R. Wicker, Jr.*